UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:11-CV-00009-JHM

JED G. JOHNSTON                                                                                      PLAINTIFF

V.

ROBERT BOSCH TOOL CORP.                                                                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on cross-motions for judgment on the Administrative Record by Plaintiff Jed Johnston and Defendant Robert Bosch Tool Corporation [DN 91]. Plaintiff has filed several motions that will be encompassed in this Opinion [DN 81, 82, 83, 84, 88, 89]. Fully briefed, the matter is ripe for decision.

**I. BACKGROUND**

Plaintiff Jed Johnston worked for Robert Bosch Tool Corporation ("Bosch") for approximately 35 years. In December of 2004, Johnston stopped working, and received short-term disability benefits from January 3, 2005 until July 1, 2005. Johnston began receiving long-term disability benefits on July 1, 2005 until August 30, 2007, when Bosch's long-term disability insurance carrier determined that Johnston was no longer disabled. Johnston has alleged that his disability and early retirement was a result of Bosch's poor treatment of him, including false write ups, taking away breaks and vacation time, withholding overtime pay and severe harassment. This treatment, Johnston states, caused his health to fail due to severe depression, panic attacks, sleep apnea, hearing loss and memory loss.

In December of 2004, Johnston was a participant in the Vermont American Corporation

1

Retirement Plan ("Vermont Plan").  However, the Vermont Plan merged into the Bosch Pension Plan on January 1, 2005, and the Vermont Plan was frozen, meaning benefits no longer accrued under the Vermont Plan.  After January 1, 2005 any benefit earned was calculated under the Bosch Pension Plan.  At retirement, a participant's benefits are calculated under the Vermont Plan through December 31, 2004, and benefits for any services after January 1, 2005 are calculated under the Bosch Pension Plan.  The Bosch Pension Plan allowed employees who were eligible for long-term disability benefits to continue to accrue benefits under the Bosch Pension Plan formula until the employee was no longer disabled.

Johnston filed for his retirement benefits at age 62 and did not receive the monthly amount he expected.  Letters written to the Bosch Benefits Plan Committee on January 19, 2010 and February 5, 2010 were treated as Johnston's formal claims for benefits under the Bosch Pension Plan.  The initial claim was denied by Bosch on March 8, 2010.  Johnston appealed the decision in writing on March 23, 2010 which was denied, affirming the original denial of the claim.

This suit followed with Johnston filing his Complaint on December 28, 2010.  In his Complaint, under ERISA, Johnston claimed he is owed additional pension benefits and his separation agreement package.  Johnston also alleges two state law claims in his Complaint: a claim for intentional infliction of emotional distress against Bosch and a cause of action for defamation of character, stating Bosch falsely accused him of theft and published these false allegations to third parties causing damages. (See Complaint; Order adopting Report and Recommendation [DN 1 and 93].)

2

## II. STANDARD OF REVIEW

The Court reviews Bosch's decision to deny Johnston any additional benefits under "the highly deferential arbitrary and capricious standard of review" because Bosch has discretionary authority to interpret and apply the plan. Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998) (quotation omitted). The arbitrary and capricious standard "is the least demanding form of judicial review . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." Perry v. United Food & Commercial Workers Dist. Unions 405 & 442, 64 F.3d 238, 241 (6th Cir. 1995). Put another way, a decision will be upheld "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." Baker v. United Mine Workers of America Health & Retirement Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

Of course, while the arbitrary and capricious standard is deferential "it is not . . . without some teeth." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003) (quotation omitted). "[M]erely because [a court's] review must be deferential does not mean [its review] must also be inconsequential . . . the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). "The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously 'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" Evans v. Unum Provident Corp., 434 F.3d 866, 876 (6th Cir. 2006) (quotation omitted).

### III. DISCUSSION

Johnston has adamantly discussed Bosch's "extreme, outrageous, intentional, reckless, hostile [and] revengeful" work environment. (Pl's Motion for Judgment on the Record, 9 [DN 89].) He has also explained his various health conditions that allegedly resulted from Bosch's work environment. In his Complaint, Johnston has not alleged that he was improperly denied disability benefits, only pension benefits. In this Opinion, the Court will not address Johnston's state law claims and will limit its discussion to Johnston's claim for additional pension benefits and his various other ERISA claims.

#### A. Conflict of Interest

For purposes of ERISA claims, there is a conflict of interest where the administrator is both the "decision maker, determining which claims are covered, and the payor of those claims." Calvert v. Firstar Finance Inc., 409 F.3d 286, 292 (6th Cir. 2005). This is true where the administrator of the plan is the employer of the potential beneficiary or an insurance company. DeLisle v. Sun Life Assurance Co of Canada, 558 F.3d 440, 445 (6th Cir. 2009). In this case, Bosch is both the decision-maker and payor under the pension plan. Accordingly, the Court will weigh this conflict as a factor in deciding whether Bosch's decision was arbitrary and capricious. See Wells v. U.S. Steel & Carnegie Pension Fund, Inc., 950 F.2d 1244, 1247 (6th Cir. 1991); Moon v. Unum Provident Corp., 405 F.3d 373, 381-82 (6th Cir. 2005).

#### B. Patent Royalty Claims

Johnston has alleged a breach of contract claim under ERISA against Bosch regarding eight patented products that Johnston designed "without a written contract between the parties." (Pl.'s Mot. Judgment on the Records, 2 [DN 89].) He claims that Bosch increased their sales

using the products he designed and he should receive patent royalties from those sales. Johnston argues that this claim falls under ERISA due to its broad scope.

In response, Bosch argues that this claim was not in the Complaint and is not properly before the Court. Even if the Court were to address the claim, Bosch states that the patents were assigned to Johnston's employer, not Johnston, evidenced by the patents Johnston submitted. As additional evidence that Johnston is not owed royalties, Bosch points to the Robert Bosch Tool Corporation Associate Handbook provided by Johnston which states that "[a]s a condition of employment or continued employment, [the employee agrees] to assign to Robert Bosch Tool Corporation all . . . rights, title, and interest in and to any invention or innovation which is determined to be relevant or useful to the Company's business, regardless of whether [the employee] developed the invention or innovation during . . . work hours or during . . . non-work hours." [DN 48-3]

The claim for patent royalties was not in the Complaint or in Johnston's claim to the plan administrator, therefore the claim and evidence is not a part of the administrative record. "A court may consider only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. The court's review is thus limited to the administrative record." Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir. 2010) (citing Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 618 (6th Cir. 1998)). Johnston's claim regarding patent royalties is not properly before the Court and based on the administrative record, Johnston has no evidence to show that he is entitled to additional benefits due to patent royalties.

Furthermore, under Kentucky law, the elements of a breach of contract are: (1) the

existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff. See Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 581 (6th Cir. 2001). To recover for a breach of contract, a plaintiff must "show the existence and the breach of a contractually imposed duty." Id. Johnston states that a contract never existed. Therefore Bosch never had a contractually imposed duty to pay royalties to Johnston. In fact, as a condition of his employment at Bosch, Johnston assigned all of his patents to his employer. Therefore, even if the Court were to address Johnston's breach of contract claim, it would fail since Johnston was never entitled to patent royalties under ERISA or any other contract.

### C. Separation Agreement Package

Throughout the litigation several conferences were held with the Magistrate Judge. In an in-person conference on February 10, 2010, Johnston indicated he would forego any claim with respect to the alleged Separation Agreement. (Scheduling Order [DN 76].) In one of his motions for judgment on the administrative record, Johnston affirmed that he was not going to pursue his claim regarding the separation agreement package. [DN 89]. Therefore, the Court will not address Johnston's claim that Bosch breached its contract in regard to the Separation Agreement and he is not entitled to any additional benefits from the Separation Agreement.

### D. Johnston's Claim for Additional Pension Plan Benefits

Johnston acknowledges that the Vermont Plan merged into the Bosch Pension Plan. He states, though, that because of the merger his retirement benefits were reduced in violation of the terms of both plans. Johnston argues that his retirement date was December 17, 2004, prior to the time the Bosch Pension Plan took effect, and therefore, he reasons that his benefits should be determined by the Vermont Plan. Additionally, Johnston states that his benefits are not subject

to the 20% reduction that Bosch applied to his accrued retirement benefits, citing to the Bosch Pension Plan that provides that "[n]o provision of this amendment and restatement shall be applied to reduce the Accrued Benefit earned by any Participant as of the Effective Date." (Bosch Pension Plan, 6 [DN 41-3].) He believes that he should be entitled to receive benefit accruals all the way to age 65 based on the Vermont Plan. Johnston calculates his pension benefits to a retirement age of 65, stating that he is owed $2,646 per month, while Bosch is only paying $1,635 per month. As evidence of the benefit amount he is owed under the Vermont Plan, Johnston submitted affidavits of other Bosch workers and their W-2s, stating that the employer ID number on the W-2 is correlated with the Vermont Plan, which Johnston states proves that Bosch continued to use the Vermont Plan after January 1, 2005.

In support of its motion for judgment on the record, Bosch argues that Johnston is not entitled to any additional pension benefits. Bosch contends the appeal committee's decision to deny Johnston's claim was not arbitrary and capricious because benefits under the Vermont Plan were legally frozen; Johnston stopped accruing benefits when he was found no longer disabled; and his method of calculation assumes he would continue to accrue benefits until normal retirement age even though he was not working or receiving long-term disability. In response to Johnston's claims that his pension benefits were reduced, Bosch states the 20% reduction is proper because under the Vermont Plan, the normal retirement age was 65. Since Johnston began receiving benefits at 62, Bosch argues that he will receive 36 more payments than originally calculated in his benefit statements (on which he bases his calculations), and, in order to adjust for those additional payments, the amount of the monthly benefit must be reduced. "To the extent benefit payments began prior to age 65, the Vermont Plan also subjected these

monthly benefit payments to an actuarial reduction." (Def.'s Memo in Opposition to Plaintiff's Motions, 7 [DN 103].) Since Johnston was out on medical leave, and began receiving disability in early 2005, he continued to accrue benefits under the Bosch Pension Plan until August 30, 2007, when he was no longer considered disabled.

### Bosch's Denial of Additional Pension Benefits

The Court finds that Bosch's denial of Johnston's claim for additional pension benefits was not arbitrary and capricious. When Johnston retired at age 62, Bosch calculated what he was entitled to receive under the Vermont Plan as of December 31, 2004. Johnston's monthly benefit was calculated to be $1,632.88. The number was a combination of what was due Johnston under the Vermont Plan as of December 31, 2004, considering early retirement at age 62, plus the accrued benefits due him during his period of disability under the Bosch Pension Plan.

Johnston's argument is based on his assertion that he terminated his employment prior to January 1, 2005, the effective date of the Bosch Plan, and thus, the terms of the Vermont Plan should apply to him. However, there is no question that he was out on a disability and remained an employee during the period of disability which lasted until August 30, 2007. If, in fact, he had terminated his employment prior to January 1, 2005, he would have no service credit at all after that date, and there would be no issue as to which plan applied. The reality is that he is entitled to benefits for service after January 1, 2005, and the only reason he is entitled to those benefits is because he continued as an employee under disability and the plan provided for such credit. His employment was not terminated, nor did he retire, prior to January 1, 2005. Thus, any credit for service after January 1, 2005, is to be applied pursuant to the Bosch Plan

provisions.

Johnston's claim that he is entitled to benefit accruals to normal retirement age despite the fact that he is no longer disabled and no longer an employee has no support. He cites to Section 6.3 of the Vermont Plan, however, as stated above, any benefit accruals after January 1, 2005, are governed by the Bosch Plan.

Lastly, Johnston's calculations are based on an Estimated Retirement Benefit Summary prepared November 24, 2004 which stated that Johnston's accrued benefits payable at the normal retirement date would be $1,952.16. (Vermont American Corporation Retirement Plan, Estimated Retirement Benefit Summary, 20 [DN 41-5].) He ignores the fact that under the Vermont Plan, the retirement benefit for early retirement at age 62 is reduced by 20%. This is because he will receive 36 more payments than if he delayed his retirement to age 65.

While it is clear that Johnston did not leave on good terms from Bosch, and he is passionate about the way he was treated by his former employer, the ERISA issue before the Court is whether he is owed additional benefits under the Vermont Plan, which merged into the Bosch Pension Plan. Bosch offered a reasoned explanation, based on the evidence. Johnston's pension amount is "the result of a deliberate principled reasoning process[,]" Baker, 929 F.2d at 1144, based on the relevant plan documentation. After reviewing "only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms[,]" Schwalm, 626 F.3d at 308, the Court holds that Bosch's outcome was not arbitrary and capricious.

The Court acknowledges that Johnston submitted affidavits of other Bosch employees, arguing that these employees retired after December 31, 2004, but retired under the Vermont

9

Plan. [DN 81, 85.] The Court is also aware that Bosch has moved to strike the affidavits [DN 104.] Even if the Court were to take into consideration the affidavits and the W-2 forms submitted, they would not alter the Court's decision. The employer ID number that Johnston refers to does not relate to the benefit plan, but the employer. The Court is persuaded by Bosch's explanation of the tax reporting forms. The motion to strike is denied as moot.

### E. ERISA Penalties

Johnston has submitted several emails and letters he has written to Bosch's plan administrator, Bosch's human resource manager and Bosch's benefits manager as proof that Bosch refused to produce the actual plan documents and accrued balance statements, in violation of ERISA. He argues that Bosch has never provided the actual plan documentation or disability plan documentation after requesting them in 2005, and Bosch has never provided the workers comp plan documentation that he requested in 2007. [DN 84.] Accordingly, Johnston states that he is owed $684,640 in penalties.

In response, Bosch first argues that this claim is not properly before the Court since it was not alleged in the Complaint. However, even if taken into consideration, Bosch states the Plan Administrator of the Bosch Pension Plan is Robert Bosch LLC, not Robert Bosch Tool Corporation. Bosch reasons that Johnston is seeking penalties from the wrong party and has not met his burden of proof that requires evidence showing a written request to the plan administrator, Robert Bosch, LLC. Furthermore, Bosch states that at all times it has worked diligently to comply with its obligations and Johnston's requests. Bosch contends that Johnston's requests have been repetitive, inconsistent and confusing. As an example, Bosch states Johnston requested the Vermont Plan after 2005 which can not be fulfilled since the

Vermont Plan no longer existed after December 31, 2004.

> ERISA provides that:
>
> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). The term administrator is defined under ERISA as "the person specifically so designated by the terms of the instrument under which the plan is operated. . . ." 29 U.S.C. § 1002(16)(A). The Vermont American Corporation Retirement Plan was maintained by Vermont American Corporation. (Vermont American Corporation Retirement Plan, 44 [DN 41-1].) The Bosch Pension Plan's administrator is Robert Bosch Corporation according to the plan, and in its reply Bosch states it is Robert Bosch, LLC (Bosch Pension Plan, 41 [DN 41-3]; Def.'s Memo in Opposition, 16 [DN 103].) The Sixth Circuit has held that "[o]nly a plan administrator can be held liable under section 1132(c), and [Bosch] was not the plan administrator." VanderKlok v. Provident Life and Acc. Ins.Co., Inc., 956 F.2d 610, 618 (6th Cir. 1992.) This Court can not impose liability pursuant to section 1132(c) on Robert Bosch Tool Corporation since it is not the designated plan administrator. Id. (citing Moran v. Aetna Life Insurance Co., 8972 F.2d 296 (9th Cir. 1989)).

Even if the Court were to consider imposing a penalty on Bosch, the "statute expressly grants a district court discretion in imposing penalties for an employer's failure to disclose." Bartling v. Fruehauf Corp., 29 F.3d 1062, 1068 (6th Cir. 1994). While Johnston has provided

11

numerous emails and communications requesting documents, the Court is unsure which documents he is still requesting. In a previous motion Johnston stated that Bosch's counsel furnished "all parties including the Court the records of the different employee benefit "Plan's" (*sic*) with plan summary's (*sic*) along with retirement calculation's (*sic*)[.]" (Pl.'s Responses and Objections, 2 [DN 36].) Bosch has submitted to the Court both the Vermont Plan with amendments and the Bosch Pension Plan as well as all of the appeal documentation and letters. Johnston provided emails requesting the plan, but he also provided cover letters from Bosch to Johnston that referenced enclosed documents such as an estimate of pension benefits, the long term disability summary plan description, the Vermont Plan and amendments, and a CD that attempts to provide Johnston with the documents he requested. (R-19, R-25, R-24, R-27 [DN 46-5, 46-6].) As the retirement documentation is on the record, and the Vermont Plan no longer existed after 2005, the Court finds Bosch complied with furnishing the pension plan documentation. The Court holds that even if Johnston had brought these claims against the Plan Administrator, penalties would not be appropriate.

### F. Fraud

Johnston has alleged that he has met his burden of proof in alleging that Bosch "produced to the court false misrepresentation and concealment of Plaintiff Jed Johnston['s] actual retirement benefits and the actual retirement "Plan" documentation Plaintiff was under[.]" (Pl.'s Reply to Def.'s Mot. for Judgment, 5 [DN 100].) He argues the false statements and misrepresentations are criminal and Bosch should be disqualified from proceeding in this case. (Pl's Mot. for Disqualification [DN 83].)

As the Court stated above, there is evidence that Bosch has provided documentation that Johnston has requested. The Court has been provided all relevant documents, including the claim letters, the Vermont Plan, the Bosch Plan, the 204(h) notice and the Benefits Plans Committee Appeal Denial by Bosch. [DN 41.] The documents confirmed that Bosch was not arbitrary and capricious in their decision in denying Johnston's appeal for additional pension benefits. While the Court acknowledges that litigation can be very stressful and frustrating, especially when outcomes are not favorable for a party, the Court finds that Bosch has not engaged in fraud or any other wrongful conduct.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Bosch's motion for judgment on the administrative record [DN 91] is **GRANTED**. Jed Johnston's motions for judgment on the administrative record are **DENIED** [DN 81, 82, 83, 84, 88, 89]. Defendant's motion to strike is **DENIED as moot.** [DN 104.]

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

September 20, 2012

cc: Plaintiff, *pro se*
    Counsel of Record